**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **M.B.-1, G.B., T.B., and A.B.**

**No. 21-0057** (Berkeley County 20-JA-17, 20-JA-18, 20-JA-19, and 20-JA-20)

## MEMORANDUM DECISION

Petitioner Father M.B.-2., by counsel Michael Santa Barbara, appeals the Circuit Court of Berkeley County's October 28, 2020, order terminating his parental rights to M.B.-1, G.B., T.B., and A.B.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Katherine A. Campbell, filed a response in support of the circuit court's order and a supplemental appendix. The guardian ad litem, Jeffrey K. Matherly, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in adjudicating him as an abusing parent, denying his motion for an improvement period, and terminating his parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In January of 2020, the DHHR filed an abuse and neglect petition against petitioner, the mother, and her live-in boyfriend alleging abuse and neglect of seven children, including four who are at issue on appeal. The DHHR alleged that the mother left the three youngest children, the oldest of whom was four years old, home alone while she and the boyfriend went shopping for food. According to the petition, law enforcement responded to a call from a maintenance man that

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because one of the children and petitioner share the same initials, we will refer to them as M.B.-1 and M.B.-2, respectively, throughout the memorandum decision.

children had been left at the mother's home unsupervised. The DHHR alleged that law enforcement officers found the conditions of the home to be deplorable and contacted Child Protective Services ("CPS") workers. According to the petition, law enforcement officers and CPS workers took several photographs and observed trash, soiled diapers, and rotting food scattered on the floor amidst toys, clothing, and other items. The DHHR further alleged that the kitchen sink was filled with black water, there was little to no food in the home, and the children indicated they had not eaten all day. The DHHR also alleged that the toilet was filthy and the children reported defecating in plastic bags and urinating in the bathtub, which was also dirty and filled with an unidentifiable substance. The petition further provided that the children reported they did not bathe and one of the children had mold growing in her hair. The DHHR also alleged that dirty mattresses were stacked and strewn throughout the home, and the children reported that they did not have designated sleeping places but instead slept on whatever mattress was available. The DHHR alleged there were additional safety hazards in the residence, including a missing stair rail and exits that were blocked by trash and other items. The petition further provided that the mother stated the residence had only become dirty overnight and that she and her boyfriend purchased cleaning supplies for the home during their shopping trip. The mother also told the CPS worker that the home was unclean because she was depressed due to the recent death of her brother. According to the petition, law enforcement officers arrested the mother for seven counts of felony child neglect based on the lack of supervision and the deplorable conditions of the home. Finally, the DHHR alleged that petitioner failed to provide the children with necessary food, clothing, shelter, supervision, and medical care.

After several continuances, the circuit court held an adjudicatory hearing in June of 2020. Petitioner failed to appear for the hearing but was represented by counsel. Petitioner's counsel moved the circuit court to continue the hearing due to petitioner's absence, stating that petitioner was in Baltimore, Maryland. However, petitioner's counsel conceded that petitioner was aware of the hearing and he "was a little surprised" that petitioner failed to appear. The circuit court denied the motion, finding that petitioner had proper notice of the hearing. The circuit court then proceeded with the hearing wherein two law enforcement officers testified as to the allegations in the petition. Specifically, the officers testified that they responded to a call concerning three preschool-aged children being left unsupervised at a home. The officers testified that the children were left alone for one to two hours before the mother and the boyfriend returned to the home. The officers further testified that the mother claimed she had left the children in the care of the boyfriend's brother, but she was unable to explain why he was absent from the home. According to the officers, the mother failed to provide any means of contacting the boyfriend's brother to confirm her assertion. The officers also testified as to the horrendous conditions in the mother's residence. One officer testified that he estimated it would take several weeks for a home to deteriorate to its condition, including his observation of rotten food, mold, and dirty diapers that had dried completely. The officer also testified that he had visited hundreds of unkempt homes in his career and that the mother's home was one of the "worst-conditioned" homes he had ever seen. Next, a CPS worker testified that the mother acknowledged the home was not in good condition but stated that the home was normally clean. The worker testified that the mother's home could not have become deplorable overnight. The worker also testified that she spoke with petitioner via telephone about the conditions inside the mother's home. According to the worker's testimony,

petitioner stated he had been to the home within the preceding two weeks and everything looked fine. However, the worker testified that when she questioned petitioner further about conditions inside the home, he conceded that he had not visited the mother's home in two to three weeks and had considered filing for custody of the children because the mother did not appear to be doing well. The worker recalled that petitioner said he had only been in the kitchen of the home once in the prior two months and had not seen anything amiss in the residence. The worker testified that she did not believe petitioner's comments regarding the mother's home because other rooms of the home are visible from the kitchen. The worker further testified that other family members told her that the mother's home had been in horrendous condition at Christmas. The worker also testified that the youngest children were non-verbal and could not inform her of issues inside the home.

In light of the evidence, the circuit court found that the mother's home had been incredibly filthy for a lengthy period of time and was among the filthiest homes ever seen in proceedings before the court. The circuit court found it "shocking" that the children were living in such conditions. The circuit court further found that petitioner was neglectful by taking no action concerning the home and knew or should have known the conditions inside the residence. As a result, the circuit court adjudicated petitioner as an abusing and neglecting parent.

In July of 2020, the circuit court held a dispositional hearing wherein petitioner failed to appear. As a result of petitioner's absence, the circuit court continued the dispositional hearing. The next month, the circuit court held the final dispositional hearing wherein petitioner appeared and moved for a post-adjudicatory improvement period while the DHHR and guardian moved for the termination of petitioner's parental rights. At the hearing, a CPS worker testified that petitioner denied any knowledge of the conditions inside the mother's home as he had not been living in the home. The CPS worker also testified that a service provider attempted to make contact with petitioner via telephone but was unable to carry on a conversation with petitioner due to what the provider believed was petitioner's level of intoxication during the call. The CPS worker further testified that petitioner lived in Maryland so the DHHR could not provide services to him. Finally, the worker testified that petitioner denied all allegations against him and made no efforts to correct the conditions of abuse and neglect.

Next, petitioner testified that he was not made aware of the adjudicatory hearing and that he was merely late to the first scheduled dispositional hearing that was continued. Petitioner further testified that he was not under the influence of any substance during the telephone call he had with a service provider. Rather, petitioner testified that any distortion of the call was because he had a new cell phone that was causing issues. Petitioner testified that the DHHR failed to offer him services. However, petitioner also acknowledged that he had not sought services on his own. Petitioner maintained that he had done nothing wrong during the proceedings and that he was unaware of the conditions inside the mother's home. Petitioner also testified that he was unemployed.

Finally, the mother testified that her home was "a bit of a wreck" and attributed her lack of housecleaning to depression stemming from her grandmother's poor health. Notably, the mother

3

previously told CPS workers that she had not cleaned the residence because her brother had recently died. The mother further testified that at "any other time the house was always clean" and was only dirty because she did not clean the previous night before law enforcement and a CPS worker visited her home. Finally, the mother testified that petitioner never lived in the home with the children and only visited one time.

At the conclusion of the hearing, the circuit court denied petitioner's motion for an improvement period. In light of the evidence presented at the dispositional hearing, the circuit court found that there was no evidence petitioner did not receive notice of the adjudicatory and initial dispositional hearings, yet he failed to appear for both. The circuit court also made numerous findings regarding the extreme filth in the mother's home at the time of the children's removal. The circuit court further found that petitioner denied the issues of neglect upon which he had been adjudicated. Finally, the circuit court found that petitioner had a lack of commitment to the children, subjected the children to severe neglect, and had a profound lack of insight into that neglect. Based upon this evidence, the circuit court found that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that it was in the best interests of the children to terminate petitioner's parental rights.[2] The circuit court entered an order reflecting its decision on October 28, 2020. Petitioner appeals from this order.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

First, petitioner argues that the circuit court erred in adjudicating him as an abusing and neglecting parent. According to petitioner, the circuit court's finding that he failed to provide necessary food, clothing, shelter and medical care for the children was "against the weight of the evidence, which demonstrated that the [DHHR] had no evidence that the [p]etitioner had failed to

---

[2]The mother's parental rights were terminated during the proceedings below, and that termination was affirmed by this Court. *See In re H.M., L.T., K.M., M.B., G.B., T.B., and A.B.*, No. 20-0951, 2021 WL 2556858 (W. Va. June 22, 2021)(memorandum decision). According to the parties, the permanency plan for the children is adoption in their current foster home.

provide for his children." Petitioner argues that the circuit court's adjudicatory and dispositional orders were "largely devoid of findings of fact or conclusions of law" sufficient to justify the termination of his parental rights. As such, petitioner argues there was insufficient evidence to adjudicate him as an abusing parent. We disagree.

We have previously held as follows:

At the conclusion of the adjudicatory hearing, the court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected . . . . The findings must be based upon conditions existing at the time of the filing of the petition and proven by clear and convincing evidence.

*In re F.S.*, 233 W. Va. 538, 544, 759 S.E.2d 769, 775 (2014). This Court has explained that "'clear and convincing' is the measure or degree of proof that will produce in the mind of the factfinder a firm belief or conviction as to the allegations sought to be established." *Id*. at 546, 759 S.E.2d at 777 (citation omitted). However, "the clear and convincing standard is 'intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases.'" *Id.* (citation omitted). West Virginia Code § 49-1-201 defines an "abusing parent" as a "parent . . . whose conduct has been adjudicated by the court to constitute child abuse or neglect as alleged in the petition charging child abuse or neglect." Additionally, pursuant to West Virginia Code § 49-1-201, a neglected child means a child whose

physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, supervision, medical care, or education, when that refusal, failure, or inability is not due primarily to a lack of financial means on the part of the parent, guardian, or custodian.

Having reviewed the record, we find that sufficient evidence existed to adjudicate petitioner as an abusing and neglecting parent. At the adjudicatory hearing, two law enforcement officers testified that they were called to the mother's home after a maintenance man found the three youngest children—the oldest of whom was four years old at the time—at home alone. Both officers testified that the children had been with them or the maintenance man for one to two hours before the mother returned home. While investigating the unsupervised children, the law enforcement officers and a CPS worker found her home to be in deplorable condition. The DHHR presented photographs of the home as evidence for purposes of adjudication. One of the officers testified that he had seen hundreds of homes in poor condition during his career and that the mother's home was one of the worst homes he had seen. All three recounted that the home was unsafe and unsanitary for the children. As a result of the conditions inside the home, the officers arrested the mother for seven counts of felony child neglect. Petitioner himself admitted visiting the mother's home on at least one occasion in the weeks prior to the filing of the abuse and neglect petition. Yet petitioner failed to act on or initially acknowledge any concerns about the conditions inside the home. Indeed, testimony demonstrated that when the DHHR first asked petitioner about the home, he said that there were no issues inside the residence. However, when pressed further

by the DHHR, petitioner acknowledged he had concerns but had failed to take any action. Still, petitioner later testified that he had done nothing wrong and claimed no responsibility for the children because he lived outside of the state.

Moreover, petitioner failed to appear in person for his adjudicatory hearing and produced no contradictory evidence at that hearing to rebut the allegations against him. As a result, the circuit court made a negative inference on the record based upon the same.

> Because the purpose of an abuse and neglect proceeding is remedial, where the parent or guardian fails to respond to probative evidence offered against him/her during the course of an abuse and neglect proceeding, a lower court may properly consider that individual's silence as affirmative evidence of that individual's culpability.

Syl. Pt. 2, *W. Va. Dep't of Health & Human Res. ex rel. Wright v. Doris S.*, 197 W. Va. 489, 475 S.E.2d 865 (1996).

Additionally, petitioner's claim that the circuit court failed to make findings of fact or conclusions of law to support its finding that petitioner was an abusing and neglecting parent is incorrect. The circuit court made several findings at the adjudicatory hearing. First, the circuit court found that petitioner "ha[d] an obligation as a father to know the environment his children are living in, and in fact he changed his story." The circuit court went on to note that petitioner "said it was a week and a half [since] he had been [in the mother's home] and then admitted it had been a little bit longer." The circuit court found that "ultimately [petitioner] admitted that he had concerns about [the mother's] parenting abilities to the extent that he was considering taking some sort of court action to obtain custody." The circuit court found that the mother's home had been "incredibly filthy for a long time," and that it had never seen a house as filthy as the mother's home. Further, the circuit court found that the level of filth that the children were living in was "shocking" and the fact that one of the children had mold growing in her hair was "shocking to [the] conscience." Finally, the circuit court found that petitioner "knew or should have known the condition that these children were living in." While the circuit court did not detail most of these findings in its orders, Rule 27 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings clearly states that "[a]t the conclusion of the adjudicatory hearing, the court shall make findings of fact and conclusions of law, in writing *or on the record*, as to whether the child is abused and/or neglected in accordance with W. Va. Code § 49-4-601(i)." (Emphasis added). As the analysis above makes clear, the circuit court made detailed findings on the record in regard to petitioner's abusive conduct and summarized them in the order on appeal. Therefore, we find no error in the circuit court's adjudication of petitioner as abusing and neglecting the children.

Next, petitioner argues that the circuit court erred in denying him a post-adjudicatory improvement period because he "testified that he was ready and able to comply with the terms of an improvement period." Petitioner argues that the DHHR failed to offer him any services and did not wish to work with him because he missed his adjudicatory hearing. We find petitioner's arguments unavailing.

6

This Court has held that an individual "charged with abuse and/or neglect is not unconditionally entitled to an improvement period." *In re Emily*, 208 W. Va. 325, 336, 540 S.E.2d 542, 553 (2000). West Virginia Code § 49-4-610(2)(B) provides that the circuit court may grant a post-adjudicatory improvement period when the parent "demonstrates, by clear and convincing evidence, that the[y are] likely to fully participate in the improvement period." "This Court has explained that 'an improvement period in the context of abuse and neglect proceedings is viewed as an opportunity for the . . . parent to modify his/her behavior so as to correct the conditions of abuse and/or neglect with which he/she has been charged.'" *In re Kaitlyn P.*, 225 W. Va. 123, 126, 690 S.E.2d 131, 134 (2010) (citation omitted). However, the circuit court has discretion to deny an improvement period when no improvement is likely. *See In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002). Further, we have previously explained that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted).

Contrary to petitioner's argument, we see no error in the circuit court's determination that petitioner was unlikely to fully participate in an improvement period. The circuit court found that petitioner failed to acknowledge or take any responsibility for the conditions that led to the abuse and neglect of the children. Specifically, petitioner continued to deny the deplorable conditions of the house at the dispositional hearing when he denied any wrongdoing and claimed he never knew the conditions inside the mother's home. However, this contradicts the CPS worker's testimony that petitioner knew of the conditions inside the home and admitted to her that he had concerns. Additionally, a service provider reached out to petitioner on one occasion only to be unable to carry on a conversation with petitioner due to his alleged intoxication. Finally, petitioner failed to appear for his adjudicatory and initial dispositional hearings, despite being provided notice. Given this evidence, we find no error in the circuit court's decision to deny petitioner a post-adjudicatory improvement period.

Finally, petitioner takes issue with the timeframe from adjudication to termination, arguing that he should have been given additional time and an opportunity to demonstrate that he could correct the conditions of abuse and neglect. However, we have previously held that "[c]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened." *Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 4, in part (citation omitted). Further, we have held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive

7

alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Here, the circuit court made the appropriate findings based upon substantial evidence. On appeal, petitioner cannot establish that these findings were in error. As such, we find no error in the termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its October 28, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: August 27, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton